540

No. 20,320.

LARRY DALE MARKHAM v. ROBERT A. THEOBALD AS
DIRECTOR OF THE DEPARTMENT OF REVENUE, ETC.
(383 P. [2d] 791)

Decided July 15, 1963.

Mr. ED CONLY, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK

E. Hickey, Deputy, Mr. Floyd B. Engeman, Assistant, for defendant in error.

*En Banc.*

Mr. Justice McWilliams delivered the opinion of the Court.

This writ of error poses a question as to the interpretation and construction to be given certain language appearing in C.R.S. '53, 13-3-24 (1960 Perm. Supp.)

Markham brought this action against Robert A. Theobald as Director of the Department of Revenue and the Motor Vehicle Division, State of Colorado, and in his complaint alleged that after a hearing before the Motor Vehicle Division on July 11, 1961, his operator's license was suspended for a period of one year, and on rehearing this order of suspension was upheld; that the suspension order was purportedly based on C.R.S. '53, 13-3-24 (1960 Perm. Supp.) and a "departmental interpretation of such statutory section contrary to the express language thereof, and at a time when . . . [he] . . . did not have sufficient points accumulated under such section to warrant the suspension of his license . . . ."

Markham asked that the defendants be required to certify to the court the record of the proceedings before the department; that upon review of such record the court "hold unlawful and set aside the action" taken by defendants, and that pending a final determination of the matter Markham's license be delivered to him.

In an *ex parte* proceeding the department was ordered to immediately "restore the right" of Markham to drive, and when the trial court thereafter on appropriate motion declined to vacate this order Theobald, as director of the Motor Vehicle Division, brought an original proceeding in this Court seeking a writ of prohibition against the trial court. Rule to show cause issued and

was eventually made absolute. See *Theobald v. District Court*, 148 Colo. *466*, 366 P. (2d) 563.

Thereafter, the record of the proceedings before the department was certified to the trial court. Upon trial one witness was called, namely Theobald, who over objection by Markham testified as to the legislative intent behind C.R.S. '53, 13-3-24 (1960 Perm. Supp.).

In our view the legislative intent may be found from a reading of the statute itself, and it is unnecessary to go elsewhere in an effort to ascertain such intent. Incidentally, this is the conclusion eventually reached by the trial court, even though it had previously permitted the director to testify.

C.R.S. '53, 13-3-24 (1960 Perm. Supp.) pertains to the authority of the Department of Revenue to suspend operator and chaffeur drivers' licenses and in connection therewith set up a so-called point system. This statute provides that "the department shall have the authority to suspend the license of any operator . . . who has, in accordance with the schedule of points set forth in this section, been convicted of traffic violations resulting in an accumulation of twelve points in one year . . . ." Sub-section 6 of that statute then lists some 22 different traffic violations, and assigns to each a numerical rating, the more serious violations, such as "hit and run" and drunken driving, being assigned the highest rating of 12 points and the gradations thereafter being downward to the least serious violation, namely, "improper, dangerous parking" to which is assigned only one point.

C.R.S. '53, 13-3-16, provides that "every operator's license shall expire on the birth anniversary of the operator occurring within the third year after the year in which such license is issued . . . [and] every such license shall be renewable within ninety days prior to its expiration . . . ," which in practical effect means that a license, when renewed, dates from the birth anni-

versary of the applicant and is valid, unless otherwise revoked, for the succeeding 3 years.

The first issue to be resolved is the meaning to be given the word "year," as this word is used in the phrase "accumulation of twelve points in one year," appearing in C.R.S. '53, 13-3-24 (1960 Perm. Supp.)

The Department contends that the word "year" means "any twelve month period during the term of the operator's license," whereas Markham argues that such "must be interpreted as a year tied to the expiration date of the license, this being referred to as an 'anniversary license year.' "

These divergent views may come into better focus by applying them to the facts of the instant case. Markham's operator's license was renewed as of November 9, 1958, his birth anniversary in 1958, and by its own terms expired on November 9, 1961. Markham would interpret the word "year," as used in C.R.S. '53, 13-3-24 (1) and when applied to his case, to mean the period of time from November 9, 1958, to November 9, 1959; or from November 9, 1959, to November 9, 1960; or from November 9, 1960, to November 9, 1961. Whereas the Department contends the word "year" means *any* twelve consecutive months during the period November 9, 1958, to November 9, 1961.

The trial court rejected the contention of the Department and adopted the position of Markham, and in so holding indicated that in its opinion the legislative intent was quite clearly expressed in C.R.S. '53, 13-3-24 (2), which provides that "the time period for the accumulation of points shall coincide with the period for which the operator's or chauffeur's license is issued." In so holding the trial court rejected the suggestion by the Department that this language appearing in subsection two of the statute has no applicability to subsection one of the same statute.

We agree with the conclusion reached by the trial court as to the meaning to be given the word "year"

and hold that the legislative intent in connection therewith is clearly manifested by the first sentence of C.R.S. '53, 13-3-24(2) (1960 Perm. Supp.).

The remaining issue to be resolved is: as of what date are accumulated points to be counted, i.e., date of conviction, or upon conviction do the points date backward to the date of the violation? To illustrate, one of Markham's traffic *convictions* was suffered on December 6, 1960, when he was adjudged guilty of a speeding violation which had previously occurred on October 29, 1960. Under the applicable statute speeding has a numerical rating of four points, and so the question posed is whether the four points attached to Markham's record as of the date of conviction, i.e., December 6, 1960, or as of the date of the actual violation, i.e., October 29, 1960.

█ The trial court held that the date of conviction was the decisive date and with this finding we are in complete accord.

C.R.S. '53, 13-3-24(1) (1960 Perm. Supp.) provides that the department has the authority to suspend the license of any operator "who has, in accordance with the schedule of points set forth in this section, been *convicted* of traffic violations resulting in the accumulation of twelve points in one year . . . " (Emphasis supplied.) From this it seems quite clear to us that the legislature intended that the date of conviction be the controlling date.

Based on the foregoing interpretation of C.R.S. '53, 13-3-24 (1960 Perm. Supp.), we conclude that the action of the department suspending Markham's license was proper, even though the department misconstrued the word "year." In other words, Markham himself concedes that even though "his" interpretation of the word "year" be correct, his suspension order was nevertheless still proper *if* the date of conviction, rather than the date of the violation, be the controlling date.

As noted, supra, Markham was convicted on Decem-

ber 6, 1960, of speeding (4 points) and the record discloses that he was also convicted on June 13, 1961, of reckless driving (8 points). Hence in the eight months immediately subsequent to November 9, 1960, Markham accumulated a total of twelve points. Such being the case the judgment of the trial court approving the suspension order entered by the department is affirmed.

MR. JUSTICE MOORE not participating.